IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| EVANSTON INSURANCE COMPANY, | § § § § | |
| *Plaintiff,* | | |
| v. | § § § § § § | CIVIL ACTION NO. _____ |
| GENE BY GENE, LTD., | | |
| *Defendant*. | | |

## COMPLAINT FOR DECLARATORY JUDGMENT

Evanston Insurance Company as Plaintiff files this Complaint for Declaratory Judgment against Gene by Gene, Ltd. as follows:

### I. PARTIES AND SERVICE

1. Plaintiff, Evanston Insurance Company ("Evanston") is a citizen of the State of Illinois. Evanston is duly organized and authorized as a "Domestic Stock Property and Casualty" insurance company under Article II of the Illinois Insurance Code. Evanston is incorporated under the laws of the State of Illinois and has its principal place of business and domicile in Deerfield, Illinois. Evanston's articles of incorporation were filed on August 1, 1977 in Illinois. Evanston is an eligible surplus lines insurer in the State of Texas, but is a citizen of the State of Illinois for purposes of diversity jurisdiction.

2. Defendant, Gene by Gene, Ltd. ("Gene by Gene") is a Texas business entity that has its principal place of business in Houston, Texas. For diversity of citizenship purposes, Gene by Gene is a Texas resident. In accordance with the Federal Rules of Civil Procedure, Gene by Gene will be served with a copy of this Complaint for Declaratory Judgment along with a summons, and/or waiver of summons, by and through its registered agent of service, that being Mr. Max Blankfeld, 1445 North Loop West, Suite 820, Houston, Texas 77008.

## II. JURISDICTION AND VENUE

3.     This Court has jurisdiction over this matter pursuant to 28 USC §1332 because Evanston which is the only plaintiff is diverse from the citizenship from Gene by Gene which is the only defendant.  The amount in controversy exceeds $75,000.00 because the complaint in the underlying lawsuit seeks actual damages in excess of $100,000.00.  Additionally, jurisdiction is predicated upon 28 USC §2201 because Evanston is seeking declaratory relief pursuant to that federal statute.  Venue is proper in the Southern District of Texas, Houston Division pursuant to 28 USC §1391(b)(1) because Gene by Gene as the defendant resides in the State of Texas and in the Southern District, Houston Division where Evanston filed this proceeding.

## III. STATEMENT OF THE CASE

**A.     The 2013-2014 General and Professional Liability Policy.**

4.     Over two policy periods, Evanston issued to Gene by Gene four policies of insurance that may be relevant to this matter.  The first policy Evanston issued to Gene by Gene, the "**Named Insured**," was a certain Specified Medical Professions General Liability (Including Products and Completed Operations Liability) – Occurrence Coverage and Specified Medical Professions Professional Liability – Claims Made Coverage bearing policy No. SM-892198.  The coverage period for this policy of insurance extends from February 5, 2013 to February 5, 2014.  This particular policy of insurance has a general liability per occurrence limit, and a professional liability per claim limit, of $1,000,000.00 with both coverages having an aggregate limit of $3,000,000.00.  The general and professional liability coverage portion has a $5,000.00 deductible. The professional liability coverage portion has a retroactive date of February 5, 2013 and it defines "**PROFESSIONAL SERVICES**" to mean "Genetic Testing Services." Hereinafter this policy of insurance shall be referred to as "Policy I."

B.     **The 2014-2015 General and Professional Liability Policy.**

5.     A second policy of insurance that Evanston issued to Gene by Gene, the "**Named Insured**," is a certain Specified Medical Professions General Liability (Including Products and Completed Operations Liability) – Occurrence Coverage and Specified Medical Professions Professional Liability – Claims Made Coverage bearing policy No. SM-898899.  The coverage period for this policy of insurance extends from February 5, 2014 to February 5, 2015.  This particular policy of insurance has a general liability per occurrence limit, and a professional liability per claim limit, of $1,000,000.00 with both coverages having an aggregate limit of $3,000,000.00.  The general liability coverage portion and the professional liability coverage portion have a $5,000.00 deductible.  The professional liability coverage portion has a retroactive date of February 5, 2013 and it defines "**PROFESSIONAL SERVICES**" to mean "Genetic Testing Services."  Hereinafter this policy of insurance shall be referred to as "Policy II."

C.     **The 2013-2014 Excess Liability Policy.**

6.     A third policy of insurance Evanston issued to Gene by Gene, the "**Named Insured**," was a Specified Medical Professions XS Professional Liability – Follow Form Claims Made Coverage and Specified Medical Professions XS General Liability (Including Products and Completed Operations Liability) – Follow Form Occurrence or Claims Made Coverage bearing Policy No. SM-895587.  This particular policy of insurance had a coverage period beginning from August 2, 2013 through February 5, 2014.  This policy of insurance had a $3,000,000.00 professional liability limit for each claim and a $3,000,000.00 combined single limit of liability for each occurrence under the general liability coverage part, an aggregate limit of $3,000,000.00, and required underlying insurance limits of liability of $1,000,000.00 under

professional liability coverage part and $1,000,000.00 under the general liability coverage part. This particular policy of insurance had a retro active date of August 2, 2013. Hereinafter this policy of insurance shall be referred to as "XS Policy I."

**D.**     **The 2014-2015 Excess Liability Policy.**

7.     A fourth policy of insurance Evanston issued to Gene by Gene, the "**Named Insured**," was a Specified Medical Professions XS Professional Liability – Follow Form Claims Made Coverage and Specified Medical Professions XS General Liability (Including Products and Completed Operations Liability) – Follow Form Occurrence or Claims Made Coverage during Policy No. XS-800378. This particular policy of insurance had a coverage period beginning from February 5, 2014 through February 5, 2015. This policy of insurance had a $3,000,000.00 professional liability limit for each claim and a $3,000,000.00 combined single limit of liability for each occurrence under the general liability coverage part, an aggregate limit of $3,000,000.00, and required underlying insurance limits of liability of $1,000,000.00 under professional liability coverage part and $1,000,000.00 under the general liability coverage part. This particular policy of insurance had a retro active date of February 5, 2013. Hereinafter this policy of insurance shall be referred to as "XS Policy II." Hereinafter Policy I, Policy II, XS Policy I, and XS Policy II may sometimes be collectively referred to as the "Evanston Policies."

**E.**     **Policy I and Policy II's Professional Liability Insuring Agreements.**

8.     Policy I and Policy II contain identical Insuring Agreements with respect to their respective professional liability coverage parts that provide:

> **INSURING AGREEMENT**
>
> The Company shall pay on behalf of the Insured all sums in excess of the Deductible amount stated in Item 6.B. of the Declarations, which the Insured shall become legally obligated to pay as Damages as a result of Claims first made

4

against the Insured during the Policy Period or during the Extended Reporting Period, if exercised, and reported to the Company pursuant to the Section A., Claim Reporting Provision, for Professional Personal Injury to which this Coverage Part applies by reason of any act, error or omission in Professional Services rendered or that should have been rendered by the Insured or by any person for whose acts, errors or omissions the Insured is legally responsible, and arising out of the conduct of the Insured's Professional Services provided:

A. the act, error or omission happens during the Policy Period or on or after the Retroactive Date stated in Item 7. of the Declarations; and

B. prior to the effective date of this policy the Insured had no knowledge of such act, error or omission or any fact, circumstance, situation or incident which may result in a Claim under this Coverage Part.

F. **Policy I and Policy II's General Liability Insuring Agreements.**

9. The Coverage A. in the Coverage B. general liability Insuring Agreements in both Policy I and Policy II are identical. Those insuring agreements provide:

**INSURING AGREEMENTS**

A. **Coverage A. – Bodily Injury and Property Damage Liability:** The Company shall pay on behalf of the Insured all sums in excess of the Deductible amount stated in Item 6.A.1. of the Declarations, which the Insured shall become legally obligated to pay as Damages as a result of Claims made against the Insured and reported to the Company pursuant to Section Claim Reporting Provision, for Bodily Injury or Property Damage to which this Coverage Part applies caused by an Occurrence, provided:

1. the entirety of such Bodily Injury or Property Damage and Occurrence happens during the Policy Period; and

2. such Bodily Injury or Property Damage arises out of only those products, goods, operations or premises specified in item 4.A. of the Declarations.

B. **Coverage B. – Personal Injury and Advertising Injury Liability:** The Company shall pay on behalf of the Insured all sums in excess of the Deductible amount stated in Item 6.A.2. of the Declarations, which the Insured shall become legally obligated to pay as Damages as a result of Claims made against the Insured and reported to the Company pursuant to Section Claim Reporting Provision, for Personal Injury or Advertising Injury to which this Coverage Part applies caused by an offense, provided:

1. the entirety of such Personal Injury or Advertising Injury and offense happens during the Policy Period; and

      2.      such Personal Injury or Advertising injury arises out of only those products, goods, operations or premises specified in Item 4.A. of the Declarations.

**G.**     **XS Policy I and XS Policy II's Insuring Agreements.**

10.     XS Policy I and XS Policy II contain identical insuring agreements. The Insuring Agreements contained within these two policies of insurance provide:

**INSURING AGREEMENT**

A.    **Coverage A. – Specified Medical Professions Professional Liability Coverage**

COVERAGE A. PROVIDES CLAIMS MADE COVERAGE ONLY.

The Company shall pay on behalf of the Insured Ultimate Net Loss to which Coverage A. applies in excess of the applicable Limits of Liability of Underlying Insurance as stated in Item 6. of the Declarations subject to this policy's Limits of Liability, provided that the Underlying Insurance also applies or would have applied but for the exhaustion of the Underlying Insurance Limits of Liability

The Company's obligation to pay Ultimate Net Loss shall not exceed the applicable Company's excess Limits of Liability stated in Item 6. of the Declarations.

Coverage A. applies solely to claims first made against the Insured during the Policy Period or any Extended Reporting Period, if exercised, and reported to the Company pursuant to Claim Reporting Conditions, for Professional Personal Injury by reason of any act, error or omission in Professional Services rendered or that should have been rendered by the Insured or by any person for whose acts, errors or omissions the Insured is legally responsible, and arising out of the conduct of the Insured's Professional Services provided:

1.     tact, error or omission happens during the Policy Period or on or after the Retroactive Date; and

2.     prior to the effective date of this policy the Insured has no knowledge of such act, error or omission or any fact, circumstance, situation or incident that may result in a claim under Coverage A.

B.  **Coverage B. – General Liability (Including Products and Completed Operations Liability)**

The Company shall pay on behalf of the Insured Ultimate Net Loss to which Coverage B. applies in excess of the applicable Limits of Liability of Underlying Insurance stated in Item 6. of the Declarations subject to this policy's Limits of Liability, provided hat the Underlying Insurance also applies or would have applied but for the exhaustion of the Underlying Insurance Limits of Liability

The Company's obligation to pay Ultimate Net Loss shall not exceed the applicable Company's excess Limits of Liability stated in Item 6. of the Declarations.

1. IF UNDERLYING INSURANCE IS AFFORDED ON AN OCCURRENCE BASIS, THE FOLLOWING APPLIES:

    Coverage B. applies to injury or damage only if the injury or damage was caused by an Occurrence or offense and the injury or damage and the Occurrence or offense which caused it occurred during the Policy Period.

2. IF UNDERLYING INSURANCE IS AFFORDED ON A CLAIMS MADE BASIS, THE FOLLOWING APPLIES:

    Coverage B. applies to claims first made against the Insured during the Policy Period or any Extended Reporting Period, if exercised, provided:

    (I) the injury or damage and the Occurrence or offense that caused it both take place on or after the Retroactive Date and before the end of the Policy Period; and

    (II) prior to the effective date of this policy the Insured has no knowledge of such Occurrence or offense or any fact, circumstance, situation or incident that may result in a claim under Coverage B.

C.  **Coverages A. and B.:**

Settlement of any claim or suit for an amount in excess of the Underlying Insurance shall not be binding on the Company without the Company's written consent.

Except as otherwise stated in this policy or Declarations, the coverage provided in this policy follows the agreements, terms, conditions, definitions, exclusions and endorsements of the Underlying insurance as stated in Item 7. of the Declarations except for premium and Limits of Liability. This policy applies solely to those Coverages stated in Item 4. of

7

the Declarations. This policy incorporates any additional exclusions included in Underlying Insurance. Where any provision of this policy conflicts with any provision of the Underlying Insurance, the provisions of this policy will apply so long as the provision in this policy is no broader than the conflicting provision in the Underlying Insurance.

In the event of bankruptcy, insolvency, liquidation or refusal or inability to pay of the Underlying Insurer or the Named Insured, this policy will apply as if the otherwise applicable Underlying Insurance Limits of Liability were available. The Company's liability under this policy shall in no way be increased or expanded as a result of the bankruptcy, insolvency, receivership, liquidation or refusal or inability to pay of the Underlying Insurer or Named Insured. The Underlying Insurance Limits of Liability shall be deemed applicable irrespective of the Insured's failure to comply with any condition of the Underlying Insurance.

**H.     The Evanston Policies' Applicable Exclusion.**

11.     By endorsement, all of the Evanston Policies contain a similar exclusion that exclude from coverage all claims asserted against Gene by Gene in the underlying lawsuit.  That applicable endorsement is entitled "**AMENDMENT OF DEFINITIONS AND EXCLUSIONS – ELECTRONIC DATA AND DISTRIBUTION OF MATERIAL IN VIOLATION OF STATUTES**."  Under the general liability coverage parts of Policy I and Policy II, this exclusion is identified as Endorsement MEIL 1313 02 12.  Under the professional liability coverage parts of Policy I and Policy II, this exclusion is identified as Endorsement MEIL 5410 02 12.  In XS Policy I and XS Policy II, this exclusion is identified as Endorsement MESX 3000 02 12.  This exclusion states that none of the Evanston Policies apply to any claim or occurrence:

>  based upon or arising out of any violation of:
>
>  (a)     the Telephone Consumer Protection Act of 1991 (TCPA) and amendments thereto or any similar or related federal or state statute, law, rule, ordinance or regulation;
>
>  (b)     the CAN-SPAM Act of 2003 and amendments thereto or any similar or related federal or state statute, law, rule, ordinance or regulation; or

  (c) any other statute, law, rule, ordinance or regulation that prohibits or limits the sending, transmitting, communication or distribution of information or other material.

**I. The Underlying Lawsuit in General.**

12. On May 13, 2014, Michael Cole, individually and on behalf of all others similarly situated ("Cole") filed against Gene by Gene a lawsuit styled Cause No.: 1:14-cv-00004-SLG: *Michael Cole, individually and on behalf of all others similarly situated v. Gene By Gene, Ltd., a Texas limited liability company d/b/a Family Tree DNA; in the United States District Court for the District of Alaska* ("Underlying Lawsuit"). Cole initiated the Underlying Lawsuit by filing his Class Action Complaint and Demand for Jury Trial ("Underlying Complaint"). Throughout the Underlying Complaint, Cole refers to Gene by Gene as "Family Tree." Accordingly, Gene by Gene may sometimes hereinafter be referred to as "Family Tree."

**J. The Underlying Lawsuit's Factual Allegations.**

13. Succinctly stated, Cole alleges Family Tree "offers a variety of genetic testing services, but is best known for marketing and selling DNA tests to consumers for the purpose of helping them research or identify their ancestry." *Underlying Complaint* ¶18. Cole contends after Family Tree completes a customer's DNA analysis, it offers services for customers to "research their ancestral origins." *Underlying Complaint* ¶21. When providing the means to customers to research their ancestry, Cole contends "Family Tree automatically publishes the full results of their DNA test to it's publically available website" without obtaining the customer's consent. *Underlying Complaint* ¶¶24 & 25.

**K. The Underlying Lawsuit's Legal and Damage Claims.**

14. Based upon the above and foregoing factual allegations, Cole on his own behalf and on behalf of a potential class asserts a single claim against Gene by Gene. The single claim Cole

asserts against Gene by Gene is for an alleged violation of Alaska Statute §18.13.010 *et seq*. *Underlying Complaint* ¶¶40-48. This statute is commonly referred to as the "Genetic Privacy Act." In Paragraph 49 of the Underlying Complaint, Cole seeks to recover the following damages:

> (1) injunctive and equitable relief as is necessary to protect the interests of Plaintiff and the Class by requiring Family Tree to cease the unlawful disclosure discussed herein; (2) actual damages; (3) statutory damages in the amount of $5,000 or, if the Court find that Family Tree's violation of the Genetic Privacy Act resulted in profit or monetary gain (which it did), $100,000 pursuant to Alaska Stat. §18.13.020; and (4) costs and reasonable attorneys' fees pursuant to Alaska Stat. §09.60.010(c).

## IV. RELIEF SOUGHT.

15. Evanston adopts hereto and incorporates herein by reference the allegations and averments set forth above in Paragraphs 4 through 14 and based upon the same asserts against Gene by Gene a claim for declaratory relief pursuant to 28 USC §2201. Specifically, Evanston asserts it does not owe a duty to defend or indemnify against Gene by Gene from and against the claims being asserted against Gene by Gene by any party in the Underlying Lawsuit. Evanston contends and asserts the Electronic Data and Distribution of Material in Violation of Statutes exclusion in the Evanston Policies exclude from coverage all claims asserted against Gene by Gene in the Underlying Lawsuit. For this reason, Evanston seeks a declaration from this Court that it does not have to defend and/or indemnify Gene by Gene from and against any claims or judgments in, or resulting from, the Underlying Lawsuit.

## V. CONDITIONS PRECEDENT

16. Evanston contends and asserts that it has complied with and performed all conditions precedent necessary to proceed with, and prosecute, this declaratory judgment action if any such conditions precedent exist or are necessary.

## VI. PRAYER

Evanston Insurance Company prays that upon final consideration and conclusion of this matter that this Court enters the declarations sought above by Evanston Insurance Company. Evanston Insurance Company requests recovery of all costs and expenses incurred in the prosecution of this declaratory judgment action. Evanston Insurance Company further seeks and requests all relief to which it may show itself justly entitled.

Respectfully submitted,

**WOJCIECHOWSKI & ASSOCIATES, P.C.**

*/s/ Marc J. Wojciechowski*
_____
Marc J. Wojciechowski
State Bar No. 21844600
17447 Kuykendahl Road, Suite 200
Spring, Texas   77379
Telephone:  281-999-7774
Facsimile:  281-999-1955
ATTORNEYS FOR PLAINTIFF,
EVANSTON INSURANCE COMPANY