United States District Court
Southern District of Texas
**ENTERED**
January 06, 2016
David J. Bradley, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| EVANSTON INSURANCE COMPANY, | § § § | |
| Plaintiff, | § § | |
| v. | § § | Civil Action No. H-14-1842 |
| GENE BY GENE, LTD., | § § § | |
| Defendant. | § § | |

## ORDER

Pending before the Court is Defendant Gene by Gene Ltd.'s Motion for Summary Judgment (Document No. 21). Having considered the motion, submissions, and applicable law, the Court determines the motion should be granted.

## I. BACKGROUND

This is an insurance coverage dispute. Defendant Gene by Gene Ltd. ("Gene by Gene") owns and operates www.familytreedna.com, a genetic genealogy website. Users of the website are offered the opportunity to test their genetic information. Once users receive their DNA test results they can analyze their genetic information to learn more about their ancestry and connect with other users

1

whose results match in varying degrees.[1] Plaintiff Evanston Insurance Company ("Evanston") is Gene by Gene's insurer. Evanston issued four policies to Gene by Gene: Policy Numbers SM-892198 and SM-898899 ("Professional Liability policies"),[2] and Policy Numbers SM895587 and XS-800378 ("Excess Liability policies")[3] (collectively, "Policies"). The Professional Liability policies are duty to defend policies.

On May 15, 2014, Gene by Gene was sued by named plaintiff Michael Cole ("Cole"), on behalf of himself and others, in Cause Number 1:14-cv-004-SLG, styled *Michael Cole, individually and on behalf of all others similarly situated v. Gene by Gene, Ltd. a Texas limited liability company d/b/a Family Tree DNA*, in the United States District Court for the District of Alaska (the "Underlying

---

[1] *See* Family Tree DNA, https://www.familytreedna.com (last visited January 1, 2016).

[2] *Defendant Gene by Gene Ltd.'s Motion for Summary Judgment*, Document No. 21, Exhibit A (*Professional Liability Policy No. SM-892198*) [hereinafter *Professional Liability Policy No. SM-892198*]; *Defendant Gene by Gene Ltd.'s Motion for Summary Judgment*, Document No. 21, Exhibit C (*Professional Liability Policy No. SM-898899*) [hereinafter *Professional Liability Policy No. SM-898899*].

[3] *Defendant Gene by Gene Ltd.'s Motion for Summary Judgment*, Document No. 21, Exhibits B (*Excess Liability Policy No. SM-8955870*) [hereinafter *Excess Liability Policy No. SM-8955870*]; *Defendant Gene by Gene Ltd.'s Motion for Summary Judgment*, Document No. 21, Exhibit D (*Excess Liability Policy No. XS-800378*) [hereinafter *Excess Liability Policy No. XS-800378*].

Lawsuit").[4] Cole alleges Gene by Gene improperly published his DNA test results on its website without his consent. Cole claims this practice violated Alaska's Genetic Privacy Act, Alaska Statute § 18.13.010 ("Genetic Privacy Act"), which prohibits the disclosure of a person's DNA analysis without written and informed consent. When Gene by Gene demanded coverage and a defense of the Underlying Lawsuit from Evanston, Evanston refused based on an exclusion in the Policies titled "Electronic Data and Distribution of Material in Violation of Statutes" ("Exclusion").

On July 2, 2014, Evanston filed the present declaratory judgment action, seeking a declaration from the Court that it does not have to defend and/or indemnify Gene by Gene from and against any claims or judgments in, or resulting from, the Underlying Lawsuit. On August 29, 2014, Gene by Gene answered and asserted its own counterclaims, requesting a declaration from the Court that Evanston is required to defend and indemnify Gene by Gene and claiming that Evanston breached its contract and violated Chapter 542 of the Texas Insurance Code. On August 28, 2015, Gene by Gene moved for summary judgment.

---

[4] *Defendant Gene by Gene Ltd.'s Motion for Summary Judgment*, Document No. 21, Exhibit E (*Class Action Complaint and Demand for Jury Trial*) [hereinafter *Underlying Suit Complaint*].

## II. STANDARD OF REVIEW

Summary judgment is proper when "there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(a). The court must view the evidence in a light most favorable to the nonmovant. *Coleman v. Hous. Indep. Sch. Dist.*, 113 F.3d 528, 533 (5th Cir. 1997). Initially, the movant bears the burden of presenting the basis for the motion and the elements of the causes of action upon which the nonmovant will be unable to establish a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The burden then shifts to the nonmovant to come forward with specific facts showing there is a genuine issue for trial. *See* FED. R. CIV. P. 56(c); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986). "A dispute about a material fact is 'genuine' if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Bodenheimer v. PPG Indus., Inc.*, 5 F.3d 955, 956 (5th Cir. 1993) (citation omitted).

But the nonmoving party's bare allegations, standing alone, are insufficient to create a material issue of fact and defeat a motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986). Moreover, conclusory allegations unsupported by specific facts will not prevent an award of summary judgment; the plaintiff cannot rest on his allegations to get to a jury without any significant probative evidence tending to support the complaint. *Nat'l*

*Ass'n of Gov't Emps. v. City Pub. Serv. Bd. of San Antonio*, 40 F.3d 698, 713 (5th Cir. 1994). If a reasonable jury could not return a verdict for the nonmoving party, then summary judgment is appropriate. *Liberty Lobby, Inc.*, 477 U.S. at 248. The nonmovant's burden cannot be satisfied by conclusory allegations, unsubstantiated assertions, or "only a scintilla of evidence." *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007) (quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994)). Furthermore, it is not the function of the court to search the record on the nonmovant's behalf for evidence which may raise a fact issue. *Topalian v. Ehrman*, 954 F.2d 1125, 1137 n.30 (5th Cir. 1992). Therefore, "[a]lthough we consider the evidence and all reasonable inferences to be drawn therefrom in the light most favorable to the nonmovant, the nonmoving party may not rest on the mere allegations or denials of its pleadings, but must respond by setting forth specific facts indicating a genuine issue for trial." *Goodson v. City of Corpus Christi*, 202 F.3d 730, 735 (5th Cir. 2000) (quoting *Rushing v. Kansas City S. R.R. Co.*, 185 F.3d 496, 505 (5th Cir. 1999)).

### III. LAW & ANALYSIS

Gene by Gene contends the claim in the Underlying Lawsuit falls under its Advertising Injury and Personal Injury coverage because it is for an injury that arises out of the written publication of material that violates a person's right of privacy. Evanston contends the claim is excluded from that coverage because it is

brought pursuant to a statute that falls under Section C of the Exclusion, which precludes coverage for "any other statute, law, rule, ordinance, or regulation that prohibits or limits the sending, transmitting, communication or distribution of information or other material."[5]

The parties agree Texas law governs the rules of insurance policy interpretation in this case. *Test Masters Educ. Servs., Inc. v. State Farm Lloyds*, 791 F.3d 561, 564 (5th Cir. 2015). To determine whether an insurer has a duty to defend an insured from an underlying lawsuit, Texas courts apply the "eight corners rule." *Id.* "'Under that rule, courts look to the facts alleged within the four corners of the [underlying] pleadings, measure them against the language within the four corners of the insurance policy, and determine if the facts alleged present a matter that could potentially be covered by the insurance policy.'" *Id.* (quoting *Ewing Constr. Co. v. Amerisure Ins. Co., Inc.*, 420 S.W.3d 30, 33 (Tex. 2014)). Courts must focus on the factual allegations in the underlying pleadings rather than any asserted legal theories or conclusions. *Id.* (citing *Ewing*, 420 S.W.3d at 33). Courts must "resolve 'all doubts regarding the duty to defend . . . in the insured's favor.'" *Id.* (quoting *Ewing*, 420 S.W.3d at 33). If the underlying complaint "'*potentially* includes a covered claim, the insurer must defend the entire suit.'" *Id.* (emphasis in original) (quoting *Zurich Am. Ins. Co. v. Nokia, Inc.*, 268 S.W.3d 487,

---

[5] *Professional Liability Policy No. SM-892198*, *supra* note 2 at 14.

6

491 (Tex. 2008)). The insured has an initial burden to establish coverage under the terms of the policy. *Gilbert Texas Const., L.P. v. Underwriters at Lloyd's London*, 327 S.W.3d 118, 124 (Tex. 2010). Once coverage is established, the insurer has the burden to show an exclusion applies. *Id.*

"If only one party's construction [of an insurance policy's language] is reasonable, the policy is unambiguous." *RSUI Indemnity Co. v. The Lynd Co.*, 466 S.W.3d 113, 118 (Tex. 2015). However, if both parties have reasonable interpretations of the language, the policy is ambiguous. *Id.* In that case, courts "*must* resolve the uncertainty by adopting the construction that most favors the insured . . . even if the construction urged by the insurer appears to be more reasonable or a more accurate reflection of the parties' intent." *Id* (emphasis added). A construction that renders any portion of a policy illusory or "meaningless, useless, or inexplicable" cannot be adopted by the court. *Evanston Ins. Co. v. ATOFINA Petrochemicals, Inc.*, 256 S.W.3d 660, 669 n.27 (Tex. 2008).

A.  *Coverage under the Policies*

According to the complaint in the Underlying Lawsuit, the sole claim asserted in the case is pursuant to Alaska's Genetic Privacy Act. That claim is based on the factual allegations that Gene by Gene "made the results of [the customers'] DNA analyses publicly available on its own websites. [Gene by Gene] also disclosed Plaintiff's sensitive information to third-party ancestry company

RootsWeb."[6] In addition, Gene by Gene "never obtained Plaintiff's or the Class's informed written consent required by [the Genetic Privacy Act] to make the results of their DNA analyses public or to disclose sensitive information to third-parties, including ancestry company RootsWeb . . . By making the results of their DNA analyses publicly available and otherwise disclosing the same to any third-parties as described herein, [Gene by Gene] violated Plaintiff's and the Class's statutorily-protected rights to privacy in their genetic information as set forth in the Genetic Privacy Act . . . as well as their common law rights to privacy."[7]

The Professional Liability policies provide coverage for "Personal Injury and Advertising Injury Liability."[8] Under the Professional Liability policies, "Advertising injury" means "injury . . . arising out of oral or written publication of material that libels or slanders a person or organization or a person's or organization's products, goods or operations or other defamatory or disparaging material, occurring in the course of the Named Insured's Advertisement."[9] "Personal injury" is defined to include "oral or written publication of material that

---

[6] *Underlying Suit Complaint*, *supra* note 4 at 13.

[7] *Underlying Suit Complaint*, *supra* note 4 at 13–14.

[8] *Professional Liability Policy No. SM-892198*, *supra* note 2 at 2; *Professional Liability Policy No. SM-898899*, *supra* note 2 at 2.

[9] *Professional Liability Policy No. SM-892198*, *supra* note 2 at 27; *Professional Liability Policy No. SM-898899*, *supra* note 2 at 45.

violates a person's right of privacy."[10] Comparing the factual allegations within the four corners of the Underlying Lawsuit and the four corners of the Policies, the claim in the Underlying Suit falls within the definition of Personal Injury because it includes the publication of material—the DNA analysis—that allegedly violates a person's right to privacy.

The Professional Liability policies define "damages" as "the monetary portion of any judgment, award or settlement."[11] Damages do not include "punitive or exemplary damages...taxes, criminal or civil fines, or attorney's fees or penalties imposed by law...sanctions...or the return of or restitution of fees, profits or charges for services rendered."[12] Fines, penalties, and taxes are "limited to payments made to the government" and do not include statutory damages that make up the monetary portion of a judgment. *Flagship Credit Corp. v. Indian Harbor Ins. Co.*, 481 F. App'x 907, 912 (5th Cir. 2012). The relief requested in the underlying lawsuit includes "an award of actual and statutory damages of $5,000."[13] This request falls under the Policies' definition of damages.

---

[10] *Professional Liability Policy No. SM-892198, supra* note 2 at 30; *Professional Liability Policy No. SM-898899, supra* note 2 at 45.

[11] *Professional Liability Policy No. SM-892198, supra* note 2 at 19; *Professional Liability Policy No. SM-898899, supra* note 2 at 15–16.

[12] *Professional Liability Policy No. SM-892198, supra* note 2 at 19.

[13] *Underlying Suit Complaint, supra* note 4 at 15.

Accordingly, the Court finds Gene by Gene, as the insured, has met its burden to establish coverage under the terms of the policy.

*B.     Applicability of Exclusion*

The Exclusion at issue in this case, included in all four policies, precludes coverage for a claim based upon or arising out of any violation of:

> (a) the Telephone Consumer Protection Act of 1991 (TCPA) and amendments thereto or any similar or related federal or state statute, law, rule, ordinance or regulation;
> (b) the CAN-SPAM Act of 2003 and amendments thereto or any similar or related federal or state statute, law, rule, ordinance, or regulation; or
> (c) any other statute, law, rule, ordinance, or regulation that prohibits or limits the sending, transmitting, communication or distribution of information or other material.[14]

Evanston contends the claim in the Underlying Lawsuit falls under the plain language of Section C of the Exclusion because it is brought pursuant to a statute—the Genetic Privacy Act—that prohibits the transmitting, communication or distribution of information or other material—namely, the public disclosure of a person's DNA analysis on Gene by Gene's website and to other third-parties like RootsWeb. Gene by Gene contends this construction of Section C is too broad and is unreasonable in light the rest of the Exclusion and the entire policy.

Specifically, Gene by Gene contends the canon of construction of *ejusdem generis* should apply to Section C. According to that canon, "Where general words

---

[14] *Professional Liability Policy No. SM-892198, supra* note 2 at 14; *Excess Liability Policy No. SM-8955870, supra* note 3 at 5; *Professional Liability Policy No. SM-898899, supra* note 2 at 7; *Excess Liability Policy No. XS-800378, supra* note 3 at 12.

follow specific words in a statutory enumeration, the general words are [usually] construed to embrace only objects similar in nature to those objects enumerated by the preceding specific words." *Yates v. United States*, 135 S. Ct. 1074, 1086 (2015) (alteration in original). The Telephone Consumer Protection Act ("TCPA") referenced in Section A of the Exclusion generally regulates the use of unsolicited telephone calls and fax transmissions to consumers.[15] Similarly, the CAN-SPAM Act of 2003 ("CAN-SPAM") referenced in Section B of the Exclusion generally regulates the use of unsolicited, fraudulent, abusive, and deceptive emails to consumers.[16] Accordingly, Gene by Gene contends Section C also refers generally to other forms of unsolicited communication to consumers "that intrude[] into one's seclusion."[17]

In response, Evanston contends Gene by Gene's reliance on *ejusdem generis* is misplaced because the "intent" of each statute is different.[18] For example, the TCPA regulates "unsolicited, automated" telephone calls and fax transmissions,

---

[15] *See* 47 U.S.C. § 227; *Mims v. Arrow Fin. Servs., LLC*, 132 S. Ct. 740, 745 (2012).

[16] *See* 15 U.S.C. §§ 7703, 7704; *White Buffalo Ventures, LLC v. Univ. of Tex. at Austin*, 420 F.3d 366, 371 (5th Cir. 2005).

[17] *Defendant Gene by Gene Ltd.'s Motion for Summary Judgment*, Document No. 21 at 10.

[18] *Evanston Insurance Company's Response to Gene by Gene, Ltd.'s Motion for Summary Judgment and Memorandum in Support Thereof*, Document No. 25 at 13.

11

while the CAN-SPAM Act regulates "false or misleading unsolicited e-mail."[19] However, while the two statutes regulate different forms of communication, the intent—to protect consumers from unsolicited communication that invades their seclusion—is the same. In addition, Gene by Gene's construction does not render the "or any similar or related" portions of Sections A and B redundant. It is reasonable to construe that language as meaning any similar or related statutes or laws that govern communication over the phone or fax machine (Section A) or e-mail (Section B), while Section C covers other, similarly unsolicited forms of communication that may be regulated by statute, law, rule, ordinance, or regulation. Accordingly, the Court finds Gene by Gene's construction of the Exclusion reasonable.[20]

In addition, Gene by Gene contends Evanston's construction is unreasonable because it would render illusory the Advertising Injury coverage, which includes

---

[19] *Evanston Insurance Company's Response to Gene by Gene, Ltd.'s Motion for Summary Judgment and Memorandum in Support Thereof*, Document No. 25 at 13.

[20] In its motion for summary judgment, Gene by Gene contends Texas Department of Insurance ("TDI") orders support its construction of the Exclusion, citing to, *inter alia*, approved forms for exclusions concerning the TCPA and CAN-SPAM Act. *Defendant Gene by Gene Ltd.'s Motion for Summary Judgment*, Document No. 21 at 12–19. In response, Evanston contends the evidence Gene by Gene cites are not actually final "orders" of the TDI, but are "correspondence and certificates from the TDI which show certain endorsements were filed with that administrative agency for the purpose of obtaining use approval." *Evanston Insurance Company's Response to Gene by Gene, Ltd.'s Motion for Summary Judgment and Memorandum in Support Thereof*, Document No. 25 at 14. Because the Court is able to determine that the Exclusion is at the very least ambiguous and that Gene by Gene's construction of it is reasonable without relying on the TDI evidence, the Court need not address whether the TDI documents are in fact final "orders."

claims arising out of the written publication of material that libels or slanders a person, and the Personal Injury coverage, which includes claims arising out of the written publication of material that violates a person's right to privacy. In response, Evanston contends

> the policies would still apply to the many more traditional defamation and advertising injuries so long as there is [no] statute, **law**, rule, ordinance or regulation that applied to the type of information being published. Thus, common law claims for [libel], slander, invasion of privacy and other forms of defamation would still be covered under the advertising injury provisions of the policies as long as there is no statute prohibiting the act complained about."[21]

However, as Gene by Gene points out, common law claims, while not codified in a statute, are still based on "law" and thus may still be excluded under Evanston's construction.[22] In addition, Gene by Gene points to states such as Texas where the "traditional defamation" injuries, like libel and false disparagement of goods, services, or business are in fact regulated by statute.[23] In that case, Evanston's construction would render a policy that explicitly includes coverage for libel illusory. However, even if the Court also found Evanston's construction

---

[21] *Evanston Insurance Company's Response to Gene by Gene, Ltd.'s Motion for Summary Judgment and Memorandum in Support Thereof*, Document No. 25 at 15 (emphasis added).

[22] *See* COMMON LAW, Black's Law Dictionary (10th ed. 2014) (defining "common law" as "the body of law derived from judicial decisions, rather than from statutes or constitutions").

[23] *See* TEX. CIV. PRAC. & REM. CODE § 73.001, *et seq* (elements of libel); TEX. BUS. & COM. CODE § 17.46(b)(8) (Texas Deceptive Trade Practices Act).

13

reasonable, the Exclusion would be ambiguous and the Court would still be required to apply the alternative reasonable construction propagated by the insured, Gene by Gene.

Applying the claim in the Underlying Suit to the Exclusion as construed by Gene by Gene, the Court finds the claim does not fall under the Exclusion. The Genetic Privacy Act does not concern unsolicited communication to consumers, but instead regulates the disclosure of a person's DNA analysis. The facts upon which the claim is based deal solely with Gene by Gene's alleged improper disclosure of DNA test results on its public website and to third-parties. The facts alleged in the complaint do not address the type of unsolicited seclusion invasion contemplated by the Exclusion. Accordingly, the Underlying Lawsuit is not excluded from Gene by Gene's policy coverage. Because Gene by Gene has met its burden to establish that the claim in the Underlying Lawsuit is covered by the Policies and Evanston did not establish that the claim is excluded, the Court finds Evanston has a duty to defend and indemnify Gene by Gene in the Underlying Lawsuit.

C. *Counterclaims*

Gene by Gene alleges Evanston breached its contract when it refused to defend and indemnify Gene by Gene pursuant to the Policies. The Court has already determined Evanston had a duty to defend and indemnify Gene by Gene

under the Policies.[24] Therefore, Evanston breached its contract when it refused coverage. Accordingly, summary judgment is granted as to Gene by Gene's breach of contract counterclaim.

Gene by Gene alleges Evanston violated Chapter 542 of the Texas Insurance Code when it delayed in paying Gene by Gene's defense costs. That chapter "may be applied when an insurer wrongfully refuses to promptly pay a defense benefit owed to the insured." *Lamar Homes, Inc. v. Mid-Continent Cas. Co.*, 242 S.W.3d 1, 20 (Tex. 2007). *See also Trammell Crow Residential Co. v. Va. Sur. Co., Inc.*, 643 F. Supp. 2d 844, 859 (N.D. Tex. 2008) (Fitzwater, J.) (holding an insurer is liable under the statute when "it wrongfully rejects its defense obligation."). An insurer is liable under the statute if it wrongfully delays payment for more than 60 days. TEX. INS. CODE § 542.058. The Court has already determined Evanston had a duty to defend under the Policies.[25] Evanston delayed more than 60 days to pay Gene by Gene's defense. Accordingly, Evanston is liable under Chapter 542 of the Texas Insurance Code and thus summary judgment is granted as to Gene by Gene's counterclaim.

---

[24] *See also Professional Liability Policy No. SM-892198*, *supra* note 2 at 1; *Professional Liability Policy No. SM-898899*, *supra* note 2 at 1.

[25] *See also Professional Liability Policy No. SM-892198*, *supra* note 2 at 1; *Professional Liability Policy No. SM-898899*, *supra* note 2 at 1.

## IV. CONCLUSION

Based on the foregoing, the Court hereby

**ORDERS** that Defendant Gene by Gene Ltd.'s Motion for Summary Judgment (Document No. 21) is **GRANTED**. The Court further

**ORDERS** that Defendant Gene by Gene must file its brief and documentation regarding the calculation of its damages, attorneys' fees, and prejudgment interest by **January 27, 2016**. The Court further

**ORDERS** that Plaintiff Evanston must submit its response to Defendant Gene by Gene's brief and calculation by **February 17, 2016**.

SIGNED at Houston, Texas, on this __6__ day of January, 2016.

*David Hittner*
DAVID HITTNER
United States District Judge